UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| VANGUARD NATIONAL TRAILER ) <br> CORPORATION and CIMC REEFER ) <br> TRAILER, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SUKHVINDER SINGH, ) <br> ) <br> Defendant. ) | Cause No. 2:24-CV-444-PPS |

## OPINION AND ORDER

Plaintiffs Vanguard National Trailer Corporation and CIMC Reefer Trailer, Inc. manufacture and sell dry freight and refrigerated, semi-trailer vans and related parts. For years, Vanguard has sold their trailers to companies owned and operated by Defendant Sukhvinder Singh and his brother Kalvinder Singh (who was originally a defendant to this action).[1] During 2023 and 2024 the Singhs' companies fell significantly behind in their payments for the trailers. In an effort to get the payments current, Plaintiffs and the Singhs began to discuss entering a forbearance agreement and a personal guaranty which would establish a payment plan for the outstanding debts. The parties disagree as to whether those agreements were ever finalized. To date, the

---

[1] Just days before this opinion was ready to be issued, Plaintiffs filed a notice of bankruptcy, informing the Court that on February 11, 2026, Kalvinder Singh filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. [DE 53]. Due to the automatic stay, the case has since been stayed as to Kalvinder Singh. [DE 58.] This ruling therefore only applies to Defendant Sukhvinder Singh, who has not filed for bankruptcy.

Singhs' companies have failed to pay what they owe for the trailers and have also filed for Chapter 11 bankruptcy. Plaintiffs have filed this suit seeking to recover from the Singhs, personally, under the forbearance agreement and alleged personal guaranty. Presently before the court are cross motions for summary judgment which are fully briefed and ripe for ruling. [*See* DE 26; DE 34].

In summary, the personal guaranty was never signed by the Sighs, and it is therefore barred by the statute of frauds. The forbearance agreement is equally problematic due to a lack of mutual assent. Summary judgment will therefore be granted in favor of the Sukhvinder Singh.

## Factual Background

The background facts underlying this case are a bit convoluted but largely undisputed. The parties agree on nearly all the facts except for whether they finalized and entered into the Forbearance Agreement and Personal Guaranty at issue. Their dispute over whether those agreements were finalized serves as the crux of this lawsuit. Let's review the circumstances which led to this action starting with the relationship between the parties.

As I've stated, Plaintiffs manufacture and sell semi-trailer vans and related parts. [DE 36 at 1-2]. For several years, Plaintiffs have maintained a business relationship with KAL Trailers & Leasing Inc. and KAL Freight Inc. (the "KAL Entities") which are owned and operated by the Singh brothers. Kalvinder Singh serves as the President of the KAL Entities. [DE 37 at 5, Ex. A- Aff. of Kalvinder Singh]. And Sukhvinder Singh is

2

employed by the KAL Entities in "various capacities". [DE 37 at 10, Ex. B- Aff. of Sukhvinder Singh].

For years, the KAL Entities have purchased refrigerated and dry trailers (and related equipment) from Plaintiffs. [*Id*. at 2]. In December 2022, Kalvinder Singh, as President of KAL Freight, entered into a Guaranty Agreement with Plaintiffs. [*Id*.]; [DE 26-1 at 51-58, Ex. A- 2022 Guaranty]. The agreement was signed by Kal Singh on behalf of KAL Freight. *Id*. It is not a personal guaranty. As part of the 2022 Guaranty, KAL Freight agreed to unconditionally guarantee the debts of its sister company, KAL Trailer, in relation to KAL Trailers' purchases of trailers and other equipment from the Plaintiffs. [DE 36 at 2].

During 2023 and 2024 the KAL Entities fell behind in their payments to Plaintiffs. [*Id*. at 3]. Eventually, the KAL Entities materially defaulted under the 2022 Guaranty and related agreements. [*Id*. at 3-4]. By Spring 2024, the debt owed by the KAL Entities to the Plaintiffs had mushroomed to roughly $41 million. [DE 28 at 5.]

Plaintiffs were understandably concerned about the state of affairs and began negotiating with the Singhs about how the KAL Entities might pay off the debt. [DE 45 at 1-2]; [DE 37 at 5-8, Ex. A- Aff. of Kalvinder Singh]; [DE 37 at 17-19 Ex. C- May 6, 2024 email chain]; [DE 37 at 20-22 Ex. D- May 16, 2024 email]; [DE 37 at 23-24 Ex. E- June 5, 2024 email]. These discussions centered around a forbearance agreement which would require the KAL Entities to pay Vanguard/CIMC $2 million each month until the entire debt was paid. [DE 45 at 1-2]. It is undisputed that during these negotiations, Plaintiffs

3

were interested in obtaining personal guarantees from the Singhs or having the Singhs pledge real estate as collateral for the KAL Entities' debt. [*Id.*] But what is clear from the record is that neither of the Singhs were remotely interested in putting themselves personally on the hook for their company's debt.

Following their initial discussions, the parties began working to draft a forbearance agreement and related documents intended to finalize their plan to address the KAL Entities' debt. [DE 45 at 2]. On June 5, 2024, Plaintiffs emailed the Singhs a proposed forbearance agreement, guaranty agreement, mortgage documents granting Plaintiffs an interest in real estate in Ohio, and a deed of trust granting Plaintiffs a security interest in real estate in California. [*Id.*]; [DE 41 at 3]; [DE 37 at 23-93, Ex. E- June 5, 2024, email and attachments].

Under the June 5, 2024 "Original Draft Forbearance Agreement" the "Obligors" required to repay the debt were proposed to be: (i) the KAL Entities, (ii) Big Rig Trailers and Leasing Inc., (iii) Kalvinder Singh, and (iv) Sukhvinder Singh. [DE 41 at 4].[2] The Original Draft Forbearance Agreement stated that Plaintiffs would be paid $2 million per month until the debt was paid in full, and that Plaintiffs would receive the proceeds of one or more sales of three separate parcels of land located in Indiana. [*Id.*]; [DE 37 at 26, Ex. E]. The Original Draft Forbearance Agreement and proposed Guaranty also

---

[2] The "Original Draft Forbearance Agreement" is the term used by Defendants to refer to the initial June 5, 2024, draft of the forbearance agreement. [DE 41 at 3]. Since Defendants' terms for the different iterations of the forbearance agreement help to differentiate between them, I will use those terms.

4

provided that the Singhs would execute a Personal Guaranty and personally guarantee the KAL Entities' debts. [DE 41 at 4]; [DE 37 at 26, Ex. E]. And, as I've stated, the Original Draft Forbearance Agreement and proposed Mortgage and Deed of Trust provided that Plaintiffs would receive mortgage liens on real estate in California and Ohio. The California real estate is owned by KAL Freight. [DE 41 at 4]. The Ohio real estate is owned personally by Sukhvinder Singh. [*Id*.] The Singhs and their related companies were unhappy with the terms of the Original Draft Forbearance Agreement and associated documents, and therefore they were never signed. [DE 41 at 6]; [DE 37 at 6, Ex. A- Aff. of Kalvinder Singh]; [DE 37 at 12, Ex. B- Aff. of Sukhvinder Singh].

Following the June 5, 2024 "Original Draft Forbearance Agreement," the parties continued to discuss the terms of a potential agreement. On June 18, 2024, the Singhs provided Plaintiffs an unsigned redline document with revisions to the Original Draft Forbearance Agreement. [DE 40-1 at 108-109, Ex. 16- June 10, 2024, email chain]; [DE 41-1 at 110-130, Ex. 17- June 18, 2024 email chain]. The following day, Plaintiffs emailed the Singhs a "First Revised Draft Forbearance Agreement," which accepted the proposed edits and made additional edits. [DE 41-1 at 131-172, Ex. 18- June 19, 2024 email chain]. In the email, Densil Williams, Vanguard's Chief Operating Officer (COO), writes "I think these agreements should be ready for signature." [*Id*. at 132]. But again, despite Williams' statement, the First Revised Draft Forbearance Agreement was never signed, and negotiations continued into July 2024. [DE 41 at 7]; [DE 37 at 6, Ex. A- Aff. of Kalvinder Singh)]; [DE 37 at 12, Ex. B- Aff. of Sukhvinder Singh].

5

On July 12, 2024, Sukhvinder Singh emailed Plaintiffs yet another revised draft of the forbearance agreement, which the parties call the "Second Revised Draft Forbearance Agreement." [DE 41 at 7]; [DE 37 at 6-7, Ex. A- Aff. of Kalvinder Singh)]; [DE 37 at 12-13, Ex. B- Aff. of Sukhvinder Singh]; [DE 37 at 137-156, Ex. G- July 12, 2024 email and attachments].[3] The July 12, 2024, email which contained the Second Revised Draft Forbearance Agreement did not contain signed versions of the Guaranty, Mortgage, or Deed of Trust, and those documents were not mentioned in the email. [DE 41 at 9]. Both parties agree that the Second Revised Draft Forbearance Agreement made several significant changes to the First Revised Draft Forbearance Agreement. For example, Big Rig was deleted as a party; language was removed requiring Plaintiffs to be paid proceeds from the sale of Indiana real estate; and language granting Plaintiffs' mortgage liens on real estate in California and Ohio was also deleted. [DE 41 at 11]. The Second Revised Draft Forbearance Agreement was signed by both Kalvinder Singh and Sukhvinder Singh. [DE 37 at 149, Ex. G]. Both parties agree that Plaintiffs did not promptly return a signed copy to the Singhs. [DE 41 at 11]. However, Plaintiffs say that although they did not send a signed copy to the Singhs, they signed the Second Revised Draft Forbearance Agreement on August 12, 2024. [DE 41 at 11].

The parties disagree as to whether "negotiations" continued following the July 12, 2024, email containing the "Second Revised Draft Forbearance Agreement" signed

---

[3] The July 12, 2024, email is sent by "MP Singh." To be clear, MP Singh and Sukhvinder Singh are the same person.

6

by the Singhs. On July 23, 2024, Densil Williams (Vanguard's COO) emailed Sukhvinder Singh thanking him for signing the "forbearance agreement" but attached the *unsigned* Original Draft Forbearance Agreement and not the Second Revised Draft Forbearance Agreement signed by the Singhs. [DE 37 at 157-227, Ex. H- July 23, 2024 email and attachments]. The Singhs claim that they viewed this email as a rejection of the Second Revised Draft Forbearance Agreement. This isn't the least bit surprising since it attached the original agreement *that was never signed*, and it reiterated the "need" for the "guarantee and mortgages." [DE 41 at 14; DE 37 at 158].[4] In short, what is clear from the record is that Plaintiffs wanted (or "needed") a personal guaranty in the transaction from the Singhs, and the Singhs were adamantly opposed to providing one.

Following receipt of the Second Revised Draft Forbearance Agreement signed by the Singhs, Plaintiffs continued to push for the Singhs to sign a personal guaranty. On July 30, 2024, Plaintiffs exchanged emails internally discussing Kalvinder Singh's reluctance to sign the Personal Guaranty but stated "MP will sign it." [DE 37 at 229, Ex. I- July 30, 2024, email]. On August 5, 2024, Plaintiffs sent a revised Guaranty to Sukhvinder which removed Kalvinder as a guarantor. [DE 37 at 230-241, Ex. J- July 30, 2024, email and attachments]. Despite Plaintiffs' efforts, Sukhvinder never signed the Personal Guaranty. [DE 37 at 14, Ex. B- Aff. of Sukhvinder Singh]. Finally, on September 4, 2024, Sukhvinder Singh forthrightly told Plaintiffs that both he and Kalvinder Singh

---

[4] Plaintiffs dispute the Singhs' characterization of Mr. Williams' email as a rejection of the Forbearance Agreement. [DE 41 at 14].

7

would not personally guarantee the KAL Entities' debts and would not grant mortgage liens as collateral for the KAL Entities' debts. [DE 37 at 243, Ex. K- Summary of September 4, 2024 meeting]; [DE 37 at 14, Ex. B- Aff. of Sukhvinder Singh]. September 4, 2024, is believed to be the final communication between the parties regarding the terms of a potential forbearance agreement. [DE 41 at 15-16].

On September 13, 2024, Plaintiffs sent the KAL Entities and the Singhs a "Notice of Forbearance Termination and Termination of Underlying Agreement" concerning "the Forbearance Agreement dated June 2024." The letter explained that the forbearance termination date had occurred, and the "Underlying Agreements" were terminated due to "Obligors" failure to timely pay amounts due under the Forbearance Agreement. [DE 26-1 at 100-102, Ex. E- Termination Notice].[5] The letter did not attach a copy of the "Forbearance Agreement dated June 2024." [DE 41 at 19].

On December 17, 2024, Plaintiffs filed this lawsuit and attached the Second Revised Draft Forbearance Agreement containing Defendants' signatures as well as an *unsigned* copy of the Guaranty. [DE 1; DE 1-2, Ex. B- Forbearance Agreement; DE 1-3, Ex. C- Personal Guaranty]. It is undisputed that the first time the Singhs ever saw a version of the Second Revised Draft Forbearance Agreement containing Plaintiffs' signatures was when it was attached as an exhibit to the complaint filed in this case. [DE 41 at 19].

---

[5] The "Underlying Agreements" are defined in the Forbearance Agreement as the invoices, contracts, and other agreements under which KAL Trailers ordered and received trailers and related equipment. [DE 37 at 140, Ex. G].

8

**Standard of Review**

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citation omitted). On a motion for summary judgment, all facts and reasonable inferences are construed in a light most favorable to the non-moving party. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 873 (7th Cir. 2025).

**Discussion**

As I've stated, both parties seek summary judgment. [DE 26; DE 34]. On the one hand, the Plaintiffs request summary judgment on Count II (Breach of the Forbearance Agreement) only. [DE 26]. For his part, Sukhvinder Singh seeks summary judgment on both of the counts brought against him—Breach of the Personal Guaranty (Count I) and Breach of the Forbearance Agreement (Count II). [DE 34]. I'll start with the claim related to the Personal Guaranty before turning to the Forbearance Agreement.

### I.   <u>Alleged Breach of the Personal Guaranty</u>

Sukhvinder Singh seeks summary judgment on Plaintiffs' claim that he violated a Personal Guaranty related to the KAL Entities' debts. He argues that this claim is a non-starter because neither of the Singhs ever executed *any* Personal Guaranty and

9

"never otherwise agreed to guarantee payment of third parties' debts to Plaintiffs." [DE 35 at 5].

Plaintiffs make a strained argument that the Singhs agreed to personally guarantee the KAL Entities' debts when they signed the Forbearance Agreement.[6] [DE 40 at 22]. Notably, this is a different theory from the one advanced by the Plaintiffs in their complaint. Plaintiffs' complaint specifically alleges a violation of a Personal Guaranty *separate from the Forbearance Agreement*. The complaint writes that Plaintiffs are entitled to recover "[p]ursuant to the Personal Guaranty **and** the Forbearance Agreement." [DE 1 at 15 (emphasis added)]. The complaint also attaches the Guaranty Agreement which is a separate document from the Forbearance Agreement. [*See* DE 1-2, Ex. B- Forbearance Agreement; DE 1-3, Ex. C- Personal Guaranty]. But recall that the Personal Guaranty that is actually attached to the complaint is unsigned.

To support their new argument that the Forbearance Agreement contains a personal guaranty, Plaintiffs point to Section E of the Forbearance Agreement. Here's what it provides:

> E. Simultaneously herewith, Kalvinder Singh and Sukhvinder Singh have each executed a guaranty in favor of CIMC/Vanguard with respect to the obligations of KAL under this Agreement, the Underlying Agreements, and the KAL Freight Guaranty (the "Personal Guaranty"), notwithstanding any provision to the contrary in this Agreement, the Obligors hereby agree that their obligations under this Agreement shall be solely limited to their personal assets and shall not extend to any property of their spouses as of the date of the signing of this Agreement. Obligors further warrant and

---

[6] The "Forbearance Agreement" referenced is the July 12, 2024 agreement (previously referred to as the "Second Revised Draft Forbearance Agreement") signed by the Singhs.

10

> represent that the personal guarantee referenced herein does not encumber, affect, or impose any obligation upon the separate property of their spouses.

[DE 1-2 at 3, Ex. B- Forbearance Agreement].

The language of Section E cuts against Plaintiffs' argument that it was intended to be a personal guaranty. Section E specifically contemplates a *separate agreement* referred to as the "Personal Guaranty" which is to be executed "simultaneously" with the Forbearance Agreement. [*Id.*] If the personal guarantees were included in the Forbearance Agreement, there would be no need to reference a "Personal Guaranty." Section E only makes sense if there is indeed a separate "Personal Guaranty." *McLinden v. Coco*, 765 N.E.2d 606, 611 (Ind. Ct. App. 2002) (explaining that the court "must accept an interpretation of the contract that harmonizes its provisions").

There is also additional evidence in the record which supports an interpretation that Section E was not intended to be a personal guaranty. The evidence shows that even after the Singhs provided Plaintiffs with the signed Forbearance Agreement, Plaintiffs understood they had yet to obtain personal guarantees. Recall that following receipt of the signed Forbearance Agreement, Plaintiffs continued to harangue the Singhs to sign a guaranty. Indeed, on July 23, 2024, Jeff Gagnon, CIMC's Vice President of Sales, wrote to MP Singh telling him "[w]e need to [sic] guarantee and the mortgages." [DE 37 at 158, Ex. H]. On July 30, 2024, Plaintiffs exchanged emails internally continuing to discuss the need for the Singhs to sign the Personal Guaranty. [DE 37 at 229, Ex. I- July 30, 2024, email]. And on August 5, 2024, Plaintiffs sent a

11

revised Guaranty to Sukhvinder Singh requesting his signature. [DE 37 at 230-241, Ex. J- July 30, 2024, email and attachments]. This evidence in the record illustrates that the personal guarantees were to be obtained in the separate "Guaranty Agreement" not encompassed in Section E of the Forbearance Agreement. [*See* DE 1-3, Ex. C].[7]

Admittedly, Section E is not a model of clarity. To the extent the language of Section E could be viewed as ambiguous, it should be interpreted not to contain a personal guaranty. The evidence in the record shows Plaintiffs' intent was to obtain personal guarantees from a separate guaranty agreement which they repeatedly asked the Singhs to sign. The parties' emails and communications regarding the personal guarantees are relevant to resolving any ambiguity in Section E. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017) ("Courts may properly consider all relevant evidence to resolve an ambiguity."); *Brownsburg Mun. Bldg. Corp. v. R.L. Turner Corp.*, 933 N.E.2d 905, 907 (Ind. Ct. App. 2010) ("When a contract is ambiguous, a court may look to extrinsic evidence to determine the parties' intent.").

What's more, the Personal Guaranty at issue which was attached to the complaint contains an Indiana choice of law provision. [DE 35 at 4]; [DE 1-3 at 7, Ex. C- Personal Guaranty]. This means it is governed by Indiana's Statute of Frauds. The Statute of Frauds provides that an "[a]ction charging any person, upon any special promise, to answer for the debt, default, or miscarriage of another" must be in writing

---

[7] The official title of the Personal Guaranty as listed in the document is "Guaranty Agreement." I refer to it as the "Personal Guaranty" to avoid confusion with the 2022 Guaranty. [*See* DE 1-3, Ex. C].

12

and signed by the party against whom the action is brought. Ind. Code § 32-21-1-1. The Personal Guaranty is precisely the type of agreement the Statute of Frauds intends to cover. The unsigned Personal Guaranty in this case, which defines the "Guarantors" as Kalvinder and Sukhvinder Singh [DE 1-3 at 2, Ex. C], provides:

> E. In furtherance of the business purposes of the Guarantors and KAL, the Guarantors desire to absolutely, irrevocably, unconditionally, and jointly and severally guaranty all obligations of KAL to CIMC/Vanguard, under or arising from the Underlying Agreements or otherwise.

[DE 1-3 at 7, Ex. C- Personal Guaranty].

As I've stated, the Singhs never signed the Personal Guaranty. [DE 35 at 5]; [DE 1-3 at 9, Ex. C- Personal Guaranty]. Because the Singhs did not sign the Personal Guaranty, it is invalid under Indiana's Statute of Frauds. *Grabill Cabinet Co., Inc. v. Sullivan*, 919 N.E.2d 1162, 1168 (Ind. Ct. App. 2010) (explaining that the Indiana Supreme Court has never wavered from the statutory requirement that a guaranty must be signed by the guarantor); *Walker v. Elkin*, 758 N.E.2d 972, 975 (Ind. Ct. App. 2001) (explaining that a contract to pay the debt of another must comport with the statute of frauds).

The evidence in the record shows that Plaintiffs were pushing hard for personal guarantees from the Singhs. That's not surprising; they were owed $41 million by the Singhs' companies which were on the verge of collapse. But the way they were attempting to accomplish this was through the Personal Guaranty that was sent to the Singhs, and not through Section E of the Forbearance Agreement. The Singhs were

13

steadfast in their refusal to sign the Personal Guaranty—and they never did. And because the Singhs never signed the Personal Guaranty, it cannot be enforced as a valid contract under Indiana law. Accordingly, summary judgment will be granted in favor of Sukhvinder Singh on Count I.

## II.     Alleged Breach of the Forbearance Agreement

Turning to the Forbearance Agreement, both parties have moved for summary judgment as to Count II (Breach of the Forbearance Agreement). Plaintiffs seek summary judgment stating that "[t]he existence and terms of the contract—the Forbearance Agreement—are undisputed and indeed admitted in the Defendants' Answer." [DE 28 at 10]. While Plaintiffs are correct that the Singhs do not dispute the terms of the Forbearance Agreement, Plaintiffs are incorrect that the existence of a contract is undisputed. Indeed, the Singhs maintain that they never entered into the Forbearance Agreement stating they "deny that that version of the Forbearance Agreement was ever accepted by Plaintiffs . . . or that terms of any forbearance agreement were ever agreed upon between the parties." [DE 36 at 10]. [*See also*, DE 37 at 5-8, Ex. A- Aff. of Kalvinder Singh].

The Singhs admit they signed the Forbearance Agreement but say, "that version was presented to Plaintiffs as a proposed revision, but Plaintiffs never communicated that it was accepted and/or returned a signed copy." [DE 35 at 7]. Defendants explain that "[i]t was not until this lawsuit was filed that Defendants saw a copy of that document with Plaintiffs' signatures." [*Id.*]

14

Formation of a contract requires an offer and acceptance, consideration, and a meeting of the minds of the contracting parties. *Peters v. Kendall*, 999 N.E.2d 1030, 1034 (Ind. Ct. App. 2013). There must be mutual assent or a meeting of the minds on all essential elements or terms to form a binding contract. *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016). The existence of a contract is a question of law. *Id. See also*, *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009).

The evidence in the record shows that the "Forbearance Agreement" signed by the Singhs and sought to be enforced by Plaintiffs made several significant changes to previous drafts of the document. The July 12, 2024, Forbearance Agreement, which Plaintiffs say is the operative Forbearance Agreement, (i) deleted Big Rig as a party, (ii) removed a provision saying that Plaintiffs would be paid from sales of Indiana real estate, and (iii) deleted the granting of mortgage liens on California and Ohio real estate. [DE 35 at 10]. These are changes that materially altered how Defendant Sukhvinder Singh was to provide payment and would undoubtedly come as a surprise to any party to the agreement not made aware of them. As such, these changes represent material alterations to the forbearance agreement. *Brooks v. Bank of Geneva*, 97 N.E.3d 647, 653 (Ind. Ct. App. 2018) (explaining that a material alteration is one which "creates a different duty of performance"); *see also Wilson Fertilizer & Grain, Inc. v. ADM Mill. Co.*, 654 N.E.2d 848, 850 (Ind. Ct. App. 1995) (citation omitted) ("The test for whether additional terms materially alter an agreement is whether their 'incorporation

15

into the contract without express awareness by the other party would result in surprise or hardship.'").

There is no dispute that Plaintiffs failed to provide the Singhs with a copy of the Forbearance Agreement signed by the Plaintiffs prior to this lawsuit. There is also a lack of evidence in the record showing that Plaintiffs ever acknowledged or expressly accepted the significant changes made to the Forbearance Agreement. As repeatedly explained by Indiana courts, the communication of acceptance of the terms of a contract is a "crucial" part of the formation of a contract. *Tchrs. Credit Union v. Cripe*, 248 N.E.3d 1230, 1237 (Ind. Ct. App. 2024); *Troutwine Ests. Dev. Co., LLC v. Comsub Design & Eng'g, Inc.*, 854 N.E.2d 890, 897 (Ind. Ct. App. 2006). If a party cannot demonstrate agreement on even one essential term of the contract, then there is no mutual assent and no contract is formed. *Lash v. Kreigh*, 202 N.E.3d 1098, 1105 (Ind. Ct. App. 2023).

Plaintiffs say they communicated their agreement to the Forbearance Agreement through their July 23, 2024 email. [DE 41 at 29]. Recall, that in Plaintiffs' July 23, 2024 email, Plaintiffs simply thanked the Singhs for signing the agreement, attached a version of the agreement that was never signed, and stated "[w]e need to guarantee and the mortgages." [DE 41-1 at 224, Ex. 24]. Plaintiffs' July 23, 2024 email did not attach the Forbearance Agreement signed by the Singhs, did not provide a signed version from Plaintiffs, and did not acknowledge the significant changes contained in the Forbearance Agreement signed by the Singhs. [*Id.*] Plaintiffs' argument that the July 23,

16

2024, email was an "acceptance" of the Forbearance Agreement leaves me dumbfounded.

Plaintiffs also claim that they verbally informed the Singhs of their acceptance and intention to abide by the Forbearance Agreement, but the Singhs dispute this. Vanguard's CEO Charles Mudd and COO Densil Willams say that they "verbally told MP Singh they would be signing the Forbearance Agreement." [DE 41-1 at 14-15, Ex. 12- Supp. Decl. of Densil Williams]; [DE 41-1 at 26, Ex. 12- Supp. Decl. of Charles Mudd]. The Singhs, however, say they've never had any knowledge of Plaintiffs' acceptance of the Forbearance Agreement. [DE 37 at 7, Ex. A- Aff. of Kalvinder Singh]; [DE 37 at 16, Ex. B- Aff. of Sukhvinder Singh].

Considering that the parties disagree as to whether acceptance was verbally communicated, we can look to their conduct to determine whether they intended to act in accordance with the Forbearance Agreement. *SWL, L.L.C. v. NextGear Cap., Inc.*, 131 N.E.3d 746, 753 (Ind. Ct. App. 2019) (explaining that to determine a party's intent, a court "should examine the final expression of that intent found in conduct"). Plaintiffs say "the Singhs' conduct reflects their understanding that the Forbearance Agreement was in place." [DE 36 at 21]. However, the Singhs have never acted in accordance with the terms of the Forbearance Agreement. Recall that the Forbearance Agreement provided that beginning July 2024, Obligors (the Singhs and the KAL Entities) were to make $2 million monthly payments until the "obligations are paid in full." [DE 1-2 at 3, Ex. B- Forbearance Agreement]. Plaintiffs say that since May 24, 2024, they have not

received payments from the Singhs (or the other Obligors) other than: (1) $50,000.00 (received June 6, 2024 by Vanguard); (2) $50,000.00 (received June 6, 2024 by CIMC); (3) $73,785.00 (received June 13, 2024 by CIMC); (4) $500,000.00 (received July 22, 2024 by Vanguard); and (5) $500,000.00 (received July 22, 2024 by CIMC). [DE 28 at 16]. Plaintiffs' own statements illustrate that the Singhs never made even one $2 million monthly payment as required by the Forbearance Agreement. The Singh's failure to make even one $2 million payment illustrates that the parties failed to reach mutual assent as to that essential term of the contract. *Torreblanca v. Trs. of Purdue Univ.*, 255 N.E.3d 476 (Ind. Ct. App. 2025) (quotation omitted) ("If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed."); *State v. Koorsen*, 181 N.E.3d 327, 335 (Ind. Ct. App. 2021) ("When the objective manifestations of the parties' intent fail to show agreement on an essential term of the purported agreement, there is . . . no contract.").

While there is some uncertainty as to whether the Singhs were verbally informed that Plaintiffs intended to sign the Forbearance Agreement, no reasonable person could conclude that there was a meeting of the minds as to the Forbearance Agreement because the overwhelming weight of the evidence is to the contrary. The evidence in the record shows that Plaintiffs failed to acknowledge the significant changes made to the Forbearance Agreement and failed to adequately communicate acceptance to the Singhs or provide them with a copy of the Forbearance Agreement containing their signature.

18

Moreover, the Singhs never adhered to the key provision of the Forbearance Agreement requiring that $2 million monthly payments be made to Plaintiffs.

Whether a contract was formed is a question of law to be determined by the Court. *Simon v. William R. Simon Farms, Inc.*, 245 N.E.3d 1025, 1031 (Ind. Ct. App. 2024) (quotation omitted) ("Whether a set of facts establishes a contract is a question of law."); *Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003) (same). Based on my review of the record, the parties failed to reach the mutual assent required to make the Forbearance Agreement a binding contract. Thus, summary judgment as to Count II (Alleged Breach of the Forbearance Agreement) should be granted in favor of Defendant Sukhvinder Singh.

## Conclusion

The evidence in the record establishes that neither the Personal Guaranty nor the Forbearance Agreement were ever finalized into a binding contract. The Singhs never signed the Personal Guaranty making it invalid and unenforceable under Indiana's Statute of Frauds. The parties also failed to reach mutual assent as to all of the essential terms of the Forbearance Agreement making it no more than a draft agreement that never became a binding contract.

**ACCORDINGLY**:

Defendants' Cross Motion for Summary Judgment [DE 34] is **GRANTED** in favor of Defendant Sukhvinder Singh and against Plaintiffs. Plaintiffs' Motion for Summary Judgment on Count II of the Complaint [DE 26] is **DENIED**.

This case remains pending against Defendant Kalvinder Singh (although it is currently stayed as to him due to his bankruptcy filing).

**SO ORDERED**.

ENTERED: March 2, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
